**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

RAQUEL WESTGATE

    Debtor                                    Chapter 7
                                                     Case No. 07-17091 (KCF)

- - - - - - - - - - - - - - - - - - - - - - - - - -X
THEODORE LISCINSKI, JR.,
Trustee in Bankruptcy

    Plaintiff,

        vs.                                            Adversary No. 07-2161

RAQUEL WESTGATE,
JOSEPH RUGGIERO, PNC BANK,
NATIONAL ASSOCIATION, and
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
Nominee for GMAC MORTGAGE
CORPORATION dba DITECH.COM

    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

Theodore Liscinski, Jr., Esquire
265 Davidson Avenue, Suite 200
Somerset, New Jersey 08873
Attorney for Trustee

Mr. Joseph Ruggiero
8 Northwoods Place
Howell, New Jersey 07731
Defendant, Pro Se

On September 26, 2007, the Chapter 7 Trustee, Theodore Liscinski, Jr. ("Trustee"), filed a complaint seeking to prove the extent, validity and priority of liens; to sell property free and clear of liens; and to sell the interest of a co-owner pursuant to § 363(h). The Trustee entered into a consent order with defendant PNC Bank, National Association, establishing its claim at $18,642.89 as of January 14, 2008 with a per diem of $4.20. The Trustee obtained a default judgment against defendant Mortgage Electronic Registration Systems, Inc., nominee for GMAC Mortgage Corporation d/b/a ditech.com ("Ditech"). The Court tried the remaining matters on June 17, 2008, and reserved decision. The Court issues the following finding of fact and conclusions of law pursuant to Fed. R. Bankr. Pro. 7052.

Facts

Raquel Westgate ("Debtor") filed a voluntary Chapter 7 Bankruptcy Petition on May 22, 2007. On Schedule A of the bankruptcy petition, the Debtor listed a joint ownership interest in 8 Northwoods Place, Howell, NJ ("property"). Schedule A lists the value of the property as $212,500 and lists two mortgages encumbering the property[1]. Schedule F lists the unsecured non-priority debt as $24,749.38.

The property was purchased solely in the name of Joseph Ruggiero by deed dated April 26, 2002. By deed dated July 26, 2002, Joseph Ruggiero transferred the property to "Joseph Ruggiero, Single and Raquel Westgate, Single". [Ex. P-4] The stated consideration in the July 26 deed was $1. Mr. Ruggiero testified that Ms. Westgate is his fiancé and that they have a six year old child that lives with them at the property. Subsequent to the transfer, the Debtor and Mr. Ruggiero obtained

---

[1] Schedule D listed no secured creditors but that is obviously inaccurate.

2

a home equity line of credit from defendant, PNC Bank, which placed a mortgage on the property dated March 15, 2004 and recorded with the Monmouth County Clerk's Office on April 17, 2004 securing $20,000. An additional mortgage dated March 12, 2004 was obtained by the Debtor and Mr. Ruggiero from defendant Ditech, and was recorded with the Monmouth County Clerk's Office on May 11, 2004 in Book 8360, Page 7454 securing $136,200.

At trial, the Trustee presented the testimony of his appraiser Robert H. Freeman of Freeman Appraisals, LLC. Mr. Ruggiero did not present any witnesses. Both parties submitted appraisals for the property. The Freeman appraisal valued the property at $215,000 as of May 9, 2008 [Ex. P-1]. Mr. Ruggiero submitted an appraisal by Lederman Appraisers, Inc. The Lederman appraisal valued the property at $177,000 as of March 22, 2008 [Ex. D-1].

Discussion

**A. First Count**

The first part of the First Count of the Trustee's complaint demands that the four defendants prove the extent and validity of their liens. The Debtor did not file an answer, but the Trustee filed a stipulation of dismissal as to her on January 15, 2008. Mr. Ruggiero filed an answer *pro se* that did not assert a lien interest in the property. In his answer, Mr. Ruggiero indicated that he regards the property as solely his property and not joint property, and he believes that adding the Debtor's name to the deed was a lapse in judgment on his part. As previously stated, PNC Bank's lien interest was established through consent order. Ditech failed to answer and a default judgment was entered against it avoiding its mortgage lien.

The second part of the First Count seeks authority to sell the property free and clear of liens.

Neither the Complaint nor the Trustee's trial brief provides any law for the requested relief, but the Court will assume the Trustee is relying upon 11 U.S.C. § 363(f). That section provides that:

> [t]he trustee may sell property under subsection (b) ... free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Courts have interpreted the requirements of Section 363(f) to be disjunctive. *See, e.g.,* In re Wolverine Radio Co., 930 F.2d 1132 (6th Cir. 1991); In re Kellstrom Industries, Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002). Accordingly, if any of the five conditions set forth in § 363(f) are met, then the Trustee is empowered to sell property free and clear of liens. The only condition that is potentially applicable here is § 363(f)(3). Since the Trustee does not have a sale currently pending, but merely seeks permission to sell free and clear of liens in the abstract, any ruling on this element of the First Count must abide an actual pending sale that satisfies the requirements of § 363(f)(3). That could be done by motion rather than complaint. *See*, Fed. R. Bankr. Pro. 6004(c) (sale free and clear of liens and other interests should be brought by motion).

**B. Second Count**

The Second Count seeks to sell the interest of Mr. Ruggiero, the non-debtor, co-owner of the property pursuant to § 363(h). Section 363(h) permits the sale of property of the estate, under section

363(b), along with the interest of a co-owner of the property if, at the time of the commencement of the case, the debtor held an undivided interest in the property as a tenant in common, joint tenant, or tenant by the entirety, and if four conditions are met. Because the provision authorizes a trustee to sell and thereby deprive a nondebtor of its property, there are significant conditions to the exercise of the power. *See*, COLLIER ON BANKRUPTCY § 3-363.08. The sale of property held by the debtor with co-owners may be authorized only if:

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> (4) the property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

The subject property is a single family home in Howell, NJ. Courts have held that where property is a single family residence, there is no practicable manner of partition other than a sale and a division of the proceeds. *See, e.g.*, Bakst v. Griffin (In re Griffin), 123 B.R. 933 (Bankr. S.D. Fla. 1991); Neylon v. Addario (In re Addario), 53 B.R. 335, 338 (Bankr. D. Mass. 1985). In the same vein, courts have recognized that the sale of an undivided interest in a single family residence will realize significantly more money for the estate. Therefore, the Court finds that the first two conditions of § 363(h) are satisfied. There has been no allegation that the property is used as anything other than a personal residence so § 363(h)(4) is satisfied as well.

The point of contention, as is typically the case, is whether the Trustee has proven that the benefit to the estate from the sale of the property outweighs any possible detriment to Mr. Ruggiero as the co-owner. The first step in that analysis is to determine if the Trustee has established that the bankruptcy estate would realize any sort of benefit. If that has been established, the burden of production then shifts to the co-owner to produce evidence that he would suffer a detriment. In re Kelley, 304 B.R. 331, 339 (Bankr. E.D. Tenn. 2003).

The only evidence of benefit to the estate the Trustee presented was the Freeman appraisal for $215,000 [Ex. P-1]. The Court must weigh that against the Lederman appraisal at $177,000 to determine if a sale of this property would result in a benefit to the estate [Ex. D-1]. The primary reason for the difference between the two values is that the Freeman appraisal included the property's breezeway as livable square footage, while the Lederman appraisal did not. Mr. Freeman testified that he does not normally include breezeways as livable square footage, but that he did so in this instance because the town's tax assessor had done so. On cross-examination, the Debtor asked Mr. Freeman if space that was not heated should be included as livable square footage, and Mr. Freeman admitted that it should not be. Since the breezeway at issue here was not heated, the Court concludes that it should not have been included as part of the square footage in the Freeman apprisal. As a result, the Court will accept the Lederman appraisal of $177,000 as the more accurate valuation.

Using that number as a starting point, the Court must then deduct for estimated costs of sale [$17,700], the Debtor's exemption [$20,200[2]] and PNC's claim [$18,760]. That calculation results

---

[2]The exemption amounts increased on April 1, 2007, and the Debtor filed in May 2007.

in $120,340 being generated from a sale[3]; the estate's one half interest in that sum would be $60,170. That amount would be enough to pay the unsecured creditors listed on Schedule F in full. Therefore, the Trustee has meet his burden of establishing that there would be a benefit to the estate.

The burden of production now shifts to Mr. Ruggiero to come forward with evidence that the harm to him outweighs the benefit to the estate. Mr. Ruggiero testified that the sale of this property would result in a total disruption of his family life. Courts have recognized that non-economic factors such as that may be considered in a court's balancing of the harms. *See, e.g.,* In re Persky, 893 F.2d 15, 20-21 (2d Cir. 1989); In re Hutter, 207 B.R. 981, 987 (Bankr. D. Conn. 1997).

In this case, the most glaring harm to Mr. Ruggiero arises from the default judgment the Trustee obtained against Ditech. As a result of that default judgment, the mortgage lien in favor of Ditech is declared void as to the Trustee and thus is no longer a lien on the property that must be paid from the proceeds of the sale. The Trustee's default judgment did nothing, however, to void the underlying obligation of Mr. Ruggiero on his promissory note. A mortgage is merely a security device. The note can exist separate from the mortgage which is why even after a foreclosure sale a deficiency action on the note may be taken if the sale did not result in full payment to the mortgage holder. *See generally*, First Union National Bank v. Penn Salem Marina, Inc., 190 N.J. 342 (2007).

Therefore, despite the Trustee's default judgment, Mr. Ruggiero will still remain responsible for payment of the mortgage note on a property he no longer owns. He will be solely liable on that note because the Debtor's obligation will have been discharged in her bankruptcy. Even if he is

---

[3] If the Ditech mortgage were included in the calculation then there would be no benefit at all from the sale and the Trustee would not have met even his initial burden.

able to purchase a new home with the sale proceeds he receives, Ditech may obtain a judgment against him on his note and that would become a lien against his new property. That ongoing burden, coupled with the fact that Mr. Ruggiero and the Debtor's young child would have to uprooted from her home, compels the Court to conclude that the burden to the non-debtor outweighs the benefit to the estate. In re Hutter, 207 B.R. 981, 987 (Bankr. D. Conn. 1997)(court should consider non-economic factors such as the existence of minor children).

An additional consideration that supports this conclusion is the fact that the voiding of Ditech's mortgage lien was accomplished by default. In the Third Circuit, judgments by default are disfavored and there is a bias in favor of matters being resolved on their merits. Budget Blinds, Inc. White, – F.3d –, 2008 WL 2875349 (3d Cir. July 28, 2008). At trial, the Trustee acknowledged that he had not filed his default judgment. It is possible that when he does, and the default is subsequently revealed in a judgment search, that Ditech will move before this Court to have the default judgment vacated. That could create a difficult situation for the Trustee and the Court. The three factors a court must consider when assessing whether to vacate a default judgment are:1) whether vacating the judgment would prejudice the plaintiff; 2) whether the defendant has a meritorious defense; and 3) whether the default was the result of the defendant's culpable conduct. Harad v. Aetna Casualty & Surety Co., 839 F.2d 979 (3d Cir. 1988). On a motion to vacate this default judgment, Ditech could have a meritorious defense - that being, that it had a valid and properly recorded mortgage and there was no basis for the Trustee to seek to avoid it. The Complaint contains no allegations that challenge the validity or priority of Ditech's lien. Ditech's lien was voided simply because it failed to answer the Complaint within the time allowed. Should

a motion to vacate default be filed and granted then there would be no equity for the estate from the sale of the property; so the non-debtor and his minor child would have been displaced from their home for no reason.

Trustee's request to sell the property pursuant to 11 U.S.C. § 363(h) is denied.

## Conclusion

The request to sell the property free and clear of liens in the First Court is denied.  The request to sell the interest of a non-debtor in the Second Count is denied.  The Trustee shall submit a form of order in accordance with this opinion.  The adversary proceeding will be closed.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: August 19, 2008